UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

AMMIANUS POMPILIUS aka Anthony Prentice and ANTHONY SALAZAR,

Plaintiffs

v.

STATE OF NEVADA EX REL, et al.,

Defendants

Case No.: 2:18-cv-01801-APG-VCF

**Screening Order on
First Amended Complaint
(ECF No. 1-2)**

Plaintiffs Ammianus Pompilius and Anthony Salazar (collectively Plaintiffs) are in the custody of the Nevada Department of Corrections (NDOC). They filed a first amended complaint (FAC) in state court, which the defendants removed to this court. It appears from the documents and the removal statement that removal to federal court was proper. I now screen the FAC (ECF No. 1-2) under 28 U.S.C. § 1915A.

**I.     SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the

Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires the federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.   SCREENING OF FAC**

Plaintiffs sue multiple defendants for events that took place while they were incarcerated at High Desert State Prison (HDSP) and Ely State Prison (ESP). ECF No. 1-2 at 2. Plaintiffs sue defendants Associate Warden Byrne, Caseworker M. Castro, Chaplain Calderin,[1] Warden Baker,

---

[1]  Plaintiffs spell the chaplain's name as both Calderin and Calderon. I will spell it "Calderin" in this order.

State of Nevada ex rel, Nevada Department of Corrections, Director Dzurenda, Warden Filson, Investigator General's Office, Correctional Officer (C/O) Wheeler, Senior C/O Mullins, and C/O Gonzales.[2] *Id.* at 2-6. Plaintiff alleges two counts and seeks monetary and injunctive relief. *Id.* at 15, 21.

### A. Count I

In count I, Plaintiffs allege the following: On February 21, 2016, Mullins directed officers to search Pompilius's cell for a second time in a week. ECF No. 1-2 at 7. Wheeler and Gonzales cuffed Pompilius and his cellmate and put them in the shower. *Id.* Gonzales and Wheeler searched Pompilius's cell for 4.5 hours. *Id.* An average cell search was about 10 to 20 minutes. *Id.* When Pompilius returned to his cell, his television was broken, his personal items were destroyed, and his trash can was filled with his personal property. *Id.* Mullins, Wheeler, and Gonzales all denied Pompilius's request for a grievance. *Id.* When Pompilius tried to file an emergency grievance on February 21 or 22, Mullins and Wheeler refused to pick up the grievance. *Id.* at 11.

On February 21 or 22, 2016, Pompilius wrote an inmate request to Baker and told her about the incident, requested that video footage be saved, and asked that the officers be sanctioned. *Id.* at 8. Baker responded that the video cameras did not look into Plaintiff's cell and that the officers involved had been spoken with. *Id.* Pompilius filed an informal grievance. *Id.*

---

[2] I dismiss defendants State of Nevada ex rel and Nevada Department of Corrections with prejudice as amendment would be futile. *See Brooks v. Sulphur Springs Valley Elec. Co-op.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (holding that "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state" and that "[t]he Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature"); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989) (holding that states are not persons for purposes of § 1983).

4

Castro responded that the policies had changed since this incident to reflect a more professional approach to cell searches and denied Plaintiff's grievance. *Id.* Pompilius filed a first level grievance but the response was the same. *Id.* "Defendants" failed to take any actions to replace Pompilius's property. *Id.* Pompilius continued to be harassed by Mullins, Wheeler, and Gonzales. *Id.*

In March 2016, Salazar moved in with Pompilius. *Id.* Salazar became a target of the "same harassment." *Id.* When Salazar moved in, both Plaintiffs were never given the phone. *Id.* at 8-9. If Plaintiffs did receive the phone, Mullins and Wheeler would unplug it. *Id.* at 9. Pompilius filed a number of grievances on the issue but Castro did not address them. *Id.* Mullins, Wheeler, and Gonzales denied Plaintiffs fingernail clippers, kites, grievances, and showers. *Id.* Prison officials denied Plaintiffs access to outside recreation. *Id.* On an almost daily basis, Wheeler and Mullins made threats of cell searches and destruction of property over Plaintiffs' intercom. *Id.*

On October 14, 2016, Plaintiffs were porters. *Id.* Mullins told them that he was going to fire them as soon as possible. *Id.* The next day, Salazar received a hobby craft package with yarn. *Id.* Pompilius and a neighbor were talking about yarn when Mullins, who was listening over the intercom, told Plaintiffs, "I told you I would fire you." *Id.*

At some point, Pompilius had an upcoming inmate mediation conference for another civil rights case and began talking to the Attorney General's Office. *Id.* at 10. Pompilius decided not to settle that case because he wanted to amend his complaint to include harassment and retaliation by Mullins, Wheeler, and Gonzales. *Id.*

Plaintiffs were slotted to work at dinner but Mullins told them that they had been suspended for making threats. *Id.* Mullins told Plaintiff that he did not feel his officers were safe

5

because Plaintiffs were using lawsuits to hold them hostage. *Id.* Pompilius told Mullins that he had a constitutional right to sue them. *Id.* Another officer informed Plaintiffs that someone had written Plaintiffs up for "threats," a "complete fabrication." *Id.* at 11. Prison officials fired Plaintiffs from their jobs. *Id.* The harassment began in February 2016 for the filing of grievances. *Id.* "Plaintiffs have reported and or attempted to report this retaliation and harassment on numerous occasions over the year it occurred." *Id.* Plaintiffs collectively have filed 20 grievances but Castro, Baker, Byrnes, and Filson have ignored the issues. *Id.* at 12. The Investigator General's Office also ignored Plaintiffs' letter. *Id.*

Plaintiffs allege violations of the Eighth Amendment right to be free from cruel and unusual punishment and Fourteenth Amendment due process and equal protection. *Id.* at 7. Pompilius only sues defendants Baker, Triston[3], Castro, and Dzurenda because he filed a separate lawsuit against the other defendants. *Id.* Salazar sues all defendants. *Id.*)

        **1.**        **Plaintiff Pompilius**

As an initial matter, Plaintiff Pompilius, aka Anthony Prentice, is correct that he sued the other defendants for these issues in *Prentice v. Stogner et al*, 3:16-cv-00060-MMD-WGC.[4] To the extent that Pompilius is only suing defendants Baker, Triston, Castro, and Dzurenda, Pompilius fails to state a colorable claim.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no

---

[3] Plaintiffs do not identify "Triston" as a defendant in the beginning of the FAC.

[4] *See* Screening Order on Amended Complaint at ECF No. 28 at 13-18. That case settled on August 17, 2018. ECF Nos. 89, 90.

6

respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

There are no allegations that any of these supervisory defendants directed or knew that Mullins, Wheeler, or Gonzales were going to conduct a cell search on February 21, 2016 and destroy Pompilius's property. And there are no allegations that any of these supervisory defendants directed or knew that Mullins was going to fire Plaintiffs from their porter jobs. Additionally, the FAC alleges that Baker spoke to the correctional officers and Castro stated that the prison had changed their cell search policy after Pompilius's grievance. As such, Pompilius fails to state any colorable supervisory liability claims against defendants Baker, Triston, Castro, and Dzurenda.

### 2. Plaintiff Salazar

Salazar fails to allege any colorable claims. To the extent that Salazar is attempting to allege an Eighth Amendment conditions of confinement claim he has not done so.[5] If Salazar

---

[5] The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

7

seeks to allege a conditions of confinement claim about hygiene and denial of outdoor exercise, he must provide allegations describing dates and time periods.

To the extent that Salazar may be attempting to allege a First Amendment retaliation claim, he has not done so.[6] Although the FAC is clear as to when Pompilius filed grievances and lawsuits and against whom, the FAC is vague and unclear as to when Salazar filed his grievances and against whom. As such, I cannot evaluate whether prison officials engaged in any adverse actions against Salazar because of his protected conduct.

Salazar fails to allege any colorable Fourteenth Amendment claims. First, there are no allegations in count I to support an equal protection claim. Second, to the extent that Salazar is attempting to allege a due process claim based on the loss of his porter job, there is no liberty or property interest in a prison job and, thus, Salazar cannot state such a claim. *See Collins v. Palczewski*, 841 F.Supp. 333, 336, 340 (D. Nev. 1993) (finding that neither the U.S. Constitution, Nevada statutory law, nor the state's prison administrative regulations create a protected liberty or property interest in prison employment).

**B.     Count II**

In count II, Salazar alleges the following: Salazar was a practicing Thelemite. ECF No. 1-2 at 15. Salazar converted to Thelema two years prior (from the date of the FAC) while he was housed at ESP where he studied and practiced the religion. *Id.* When prison officials transferred

---

[6] Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68.

8

Salazar to HDSP, he submitted a faith declaration and stated that his faith should be switched from Catholic to Thelema. *Id.* Salazar also requested to be put on the chapel list. *Id.* After filing three or four faith declaration requests, prison officials granted Salazar's requests. *Id.* Salazar attended every Thelema chapel service for about six months before he was no longer permitted to attend Thelema services. *Id.* Salazar asked a fellow Thelemite, Jesse Cooper, why he was no longer on the list. *Id.* Cooper responded that the chaplain had told him that Salazar was "down as Catholic." *Id.* Salazar turned in a kite and a faith declaration to the chaplain "to no avail." *Id.* at 16. Inmates Cooper and Pompilius[7] turned in kites and faith declarations on behalf of Salazar "to no avail." *Id.*

On December 1, 2017, Pompilius turned in another faith declaration for Salazar and asked the chaplain why he kept removing inmates from the pagan lists and making them Christian. *Id.* The chaplain denied doing that. *Id.* The chaplain looked Salazar up and said that Salazar was down as a Catholic and could not change his religion for eight months. *Id.* When Pompilius explained that Salazar had been going to the chapel for six months and had changed his faith from Catholic to Thelema, the chaplain responded that he would look into it. *Id.* The chaplain has switched pagan inmates to Christian without requiring them to wait a year. *Id.* at 17. However, when inmates are trying to switch to a pagan religion, the chaplain requires them to file multiple faith declarations and kites. *Id.* The inmates who seek to declare their faith as Christian, Jewish, and Muslim are approved on their first requests. *Id.*

Salazar alleges violations of First Amendment freedom of religion and Fourteenth Amendment equal protection. *Id.* at 15.

---

[7] In this count, Plaintiff Pompilius refers to himself as Prentice. However, for consistency, I will continue to refer to him as Pompilius. ECF No. 1-2 at 15-16.

9

### 1.      Free Exercise of Religion

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof. U.S. Const. amend. I.  The Supreme Court of the United States has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).  The Supreme Court has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id*.  During summary judgment, courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment on appeal).

Salazar states a colorable free exercise claim against Calderin, the chaplain.  Based on the allegations, prison officials had approved Salazar's faith change to Thelema.  Based on the allegations, Salazar had been practicing Thelema for several months when Calderin declared Salazar a Catholic and refused to let Salazar continue practicing Thelema.  This is sufficient to state a colorable claim on screening and the claim will proceed against defendant Calderin.

/ / / /

/ / / /

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Salazar states a colorable equal protection claim. Based on the allegations, Calderin treats Christian, Jewish, and Muslim inmates differently from pagan inmates when it comes to switching religions. Based on the allegations, any inmate switching to Christian, Jewish, or Muslim are approved on their first faith declaration but any inmate who seeks to switch to a pagan religion must file numerous faith declarations and requests to become a pagan. Based on the allegations, this happened to Salazar. This claim will proceed against defendant Calderin.

### C. Misjoinder of Parties

Under Federal Rule of Civil Procedure 20(a), plaintiffs may join in one action if: (1) the plaintiffs assert any right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there are common questions of law or fact. *See* Fed. R. Civ. P. 20(a)(1)(A)-(B). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); Fed. R. Civ. P. 21 (discussing misjoinder and nonjoinder of parties).

The test for permissive joinder is not satisfied here. First, counts I and II are unrelated to each other and count II involves only the rights of Plaintiff Salazar. Second, even though Plaintiffs were roommates with respect to some of the allegations in count I, Salazar has to independently demonstrate that his own individual rights had been violated under the circumstances. As discussed above, it is unclear whether the defendants committed any violations against Salazar in count I. Accordingly, Plaintiffs may not proceed together and must each pursue their own separate lawsuits.

If Plaintiff Pompilius chooses to amend count I on his own behalf, he will litigate his claims under the instant case number. The court will open a separate case number where Plaintiff Salazar may continue to litigate his claims.

**D.     Leave to Amend**

Plaintiffs are granted leave to file separate second amended complaints in their own lawsuits to cure the deficiencies of the FAC. If Plaintiffs choose to file their own second amended complaints in their own lawsuits, they are advised that a second amended complaint supersedes (replaces) the original and first amended complaints and, thus, the second amended complaints must be complete in themselves. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Plaintiffs' second amended complaints must contain all claims, defendants, and factual allegations that Plaintiffs wish to pursue in their individual lawsuits. Moreover, Plaintiffs

should file their second amended complaints on this court's approved prisoner civil rights forms and they must be entitled "Second Amended Complaint."

## III. CONCLUSION

For the foregoing reasons, I order that Plaintiffs and their claims are severed into two separate actions.

I further order the Clerk of the Court to administratively open a new case assigned to me with Anthony Salazar as the plaintiff and Chaplain Calderin as the only defendant.

I further order the Clerk of the Court to file this order and a copy of the first amended complaint (ECF No. 1-2) in the new case.

I further order the Clerk of the Court to note that the filing fee in the new case is administratively waived because the new case is severed from this removed case.

**I further order, with respect to the new case and Plaintiff Salazar**:

- Count I is dismissed without prejudice with leave to amend.
- Count II, alleging free exercise of religion and equal protection claims, will proceed against defendant Calderin.
- If Plaintiff Salazar chooses to file a second amended complaint curing the deficiencies of his FAC as outlined in this order, he will do so **by November 27, 2019**.
- The Clerk of the Court will send to Plaintiff Salazar the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his FAC (ECF No. 1-2). If Plaintiff Salazar chooses to file a second amended complaint, he should use the approved form and he will write the words

"Second Amended" above the words "Civil Rights Complaint" in the caption.

- If Plaintiff Salazar chooses not to file a second amended complaint curing the stated deficiencies of the FAC, this action will proceed immediately on the free exercise of religion and equal protection claims against defendant Calderin only.

**I further order, with respect to the instant case and Plaintiff Pompilius:**

- The FAC (ECF No. 1-2) is the operative complaint.
- The FAC is dismissed in its entirety without prejudice with leave to amend as to count I only.
- Defendants Byrne, Castro, Calderin, Baker, Dzurenda, Filson, Investigator General's Office, Wheeler, Mullins, and Gonzales are dismissed from this case without prejudice.
- Defendants State of Nevada ex rel. and Nevada Department of Corrections are dismissed from this case with prejudice as amendment would be futile.
- If Plaintiff Pompilius chooses to file a second amended complaint curing the deficiencies of the FAC as outlined in this order, he will do so **by November 27, 2019**.
- The Clerk of the Court will send to Plaintiff Pompilius the approved form for filing a § 1983 complaint, instructions for the same, and a copy of his FAC (ECF No. 1-2). If Plaintiff Pompilius chooses to file a second amended complaint, he should use the approved form and he will write the

words "Second Amended" above the words "Civil Rights Complaint" in the caption.

- If Plaintiff Pompilius chooses not to file a second amended complaint, I will dismiss this action with prejudice for failure to state a claim.

Dated: October 23, 2019

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE